IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Tocee Martineze Mitchell,<br>    Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 1:25-cv-1423 (RDA/IDD) |
| Warden, F.C.I. Petersburg,<br>    Respondent. | ) <br> ) <br> ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Respondent's motion to dismiss[1] federal inmate Tocee
Martineze Mitchell's *pro se* petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241.
Dkt. No. 1. Mitchell ("Petitioner" or "Mitchell") challenges the Federal Bureau of Prisons'
("BOP") denial of his application to have his First Step Act ("FSA") time credits applied to his
prerelease custody date in order to be transferred to a Residential Reentry Center ("RRC") or Home
Confinement ("HC"). Dkt. 1 at 7; Dkt. No. 2 at 12. On January 12, 2026, Respondent filed a motion
to dismiss, with a supporting brief. Dkt. Nos. 11-13. On January 13, 2026 Mitchell was advised of
his rights under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Dkt. No. 15, and filed a
Traverse stating that his "case presents a pure question of law: whether the [BOP] may lawfully
refuse to apply earned First Step Act time credits" and concerns the interpretation of two statutes:
"Earning credits under 18 U.S.C. § 3632(d)(4)" and "Applying credits toward prerelease custody
or release under 18 U.S.C. § 3624(g)." Dkt. No. 16 at 2-3. Respondent's motion to dismiss argues
that the petition should be dismissed based upon the plain language of § 3624(g)(1). Dkt. No. 13
at 11-16. Accordingly, this matter is ripe for disposition. For the reasons stated below, the motion

---

[1] Respondent filed, in the alternative, a motion for summary judgment. Dkt. Nos. 11-13.
The motion to dismiss is dispositive and, thus, the motion for summary judgment will be dismissed
as moot.

to dismiss must be granted.

## I. STANDARD OF REVIEW

Title 28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." Under the federal habeas statute, federal courts may consider "not only constitutional claims but claims of statutory interpretation as well." *Bowrin v. U.S. INS*, 194 F.3d 483, 487 (4th Cir. 1999) (citing *Goncalves v. Reno*, 144 F.3d 110, 123-24 (1st Cir. 1998)). In addition, "attacks on the execution of a sentence are properly raised in a § 2241 petition." *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)); *Hanahan v. Luther*, 693 F.2d 629, 632 n.1 (7th Cir. 1982)). After receiving a petition and the respondent's response, "[t]he court shall summarily hear and determine the facts[] and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

In reviewing a Rule 12(b)(6) motion to dismiss, the Court must determine if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when it contains factual allegations that permit the court to reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. Although the Court must take all factual allegations as true for purposes of a Rule 12(b)(6) motion, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court also "need not accept factual allegations that constitute nothing more than legal conclusions or naked assertions." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, L.L.C.*, 713 F.3d. 175, 182 (4th Cir. 2013) (internal quotation marks omitted). In ruling on a motion to dismiss

2

pursuant to 12(b)(6), a court is not confined to the "four corners of the complaint." *United States ex rel. Oberg v. Penn Higher Educ. Assist. Agency*, 745 F.3d 131 (4th Cir. 2014). The court may consider exhibits to pleadings and documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557-58 (4th Cir. 2013) (in addition to the complaint, the court may also consider documents incorporated by reference in the complaint and matters subject to judicial notice).[2]

## II. RELEVANT FACTS AND STATUTES

1.      On February 18, 2022, Mitchell was convicted of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and sentenced to 94 months in prison. *United States v. Mitchell*, No. 1:23-cv-00061-DAB-LPA (M.D.N.C.), *aff'd*, No. 22-4250, 2022 U.S. App. LEXIS 35430 (4th Cir. Dec. 20, 2022).

2.      Mitchell is currently detained at FCI-Petersburg, and his current release date is November 8, 2027. *See* https://www.bop.gov/inmateloc (search Register Number: 29718-509; last viewed June 8, 2026).[3]

---

[2] *Banoub v. Crawford*, 819 F. Supp. 3d 477, 484 n.11 (E.D. Va. Dec. 23, 2025) ("Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241." (citing *Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007))); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (observing that under Rule 11, Rules Governing § 2254 Cases, that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied when appropriate, to petitions filed under these rules." (citing Fed. R. Civ. P. 81(a)(2) ("These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in the statutes of the United States, the Rules Governing Section 2254 Cases, the Rules Governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil action."))).

[3] *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous

3.    The FSA directed the Attorney General to develop a Risk and Needs Assessment System (the "System") to

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
>
> (3) determine the type and amount of evidence-based recidivism reduction [EBRR] programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
>
> (4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;
>
> (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—
>
>> (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;
>>
>> (B) to address [ ] the specific criminogenic needs of the prisoner; and
>>
>> (C) all prisoners are able to successfully participate in such programs;
>
> (6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);
>
> (7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and
>
> (8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

18 U.S.C. § 3632(a) (footnote omitted).

---

others routinely take judicial notice of information contained on state and federal government websites." (citing *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004); *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1297 n.4 (10th Cir. 2017*); Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015))).

4.     The time credits component provides as follows:

(A) In general. A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(B) Availability. A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

(i) prior to the date of enactment of this subchapter [enacted Dec. 21, 2018]; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a) [18 USCS § 3585(a)].

(C) Application of time credits toward prerelease custody or supervised release. Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g) [18 USCS § 3624(g)], into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4).

5.     The recidivism risk assessment, or PATTERN scoring, considers multiple risk items such as an inmate's current age, criminal history points, history of violence, and programs completed, among other factors. Some items, such as criminal history points, receive positive scores (*i.e.*, 40), while other items, such as programs completed, receive negative scores (*i.e.*, -12). *See* BOP: First Step Act, Resources (https://www.bop.gov/inmates/fsa/pattern.jsp) (last viewed, June 8, 2026). The risk items that receive negative scores reduce an inmate's overall risk scores,

5

which will in turn assist an inmate in reducing his recidivism risk level designation (*i.e.*, from a "high risk" to a "medium risk'). As such, PATTERN scoring considers both dynamic and static risk factors and is designed to change throughout an inmate's incarceration by addressing these dynamic factors. An inmate will receive one of the following risk level designations: minimum, low, medium, or high. The BOP is required to update the risk assessment for each inmate periodically.[4]

6.    Eligible inmates with any of the four recidivism risk levels may earn FSA time credits, but only those inmates with low and minimum scores are eligible for the application of time credits toward pre-release custody and/or early release to a term of supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i), (ii); 28 C.F.R. § 523.42 (outlining the earning of FSA time credits); 28 C.F.R. § 523.44(c)(1) and (d)(1) (limiting application of Federal Time Credits ("FTC") to eligible inmates who have a minimum or low recidivism risk).

7.    Inmates with a "high risk" or "medium risk" recidivism level are generally not eligible for the application of FSA time credits toward early transfer to prerelease custody and/or early release to a term of supervised release.

8.    Title 18 U.S.C. § 3624(g)(1), limits application of the time credits as follows:

(1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated

---

[4] *Samoiloff v. Stover, Warden of FCI Danbury*, 733 F. Supp. 3d 68, 70 (D. Conn. 2024) ("Program Reviews occur approximately every 180 days unless an inmate is within one year of release, in which case they occur every 90 days." (citing 28 C.F.R. § 524.11(a))).

recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; *and*

(D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

(emphasis added).

9.    Section 3624(g) provides two means by which earned time credits may be applied toward transfer to prerelease custody: an inmate must (1) have been determined to be at minimum or low recidivism risk for his or her last two assessments, *see* 18 U.S.C. § 3624(g)(1)(D)(i)(I) ; or (2) have had a petition granted by the warden of the prison, in accordance with the findings required under 18 U.S.C. § 3624(g)(1)(D)(i)(II).[5]

---

[5] One court addressing similar claims, refers to the two means by which time credits can be applied as Option One (18 U.S.C. § 3624(g)(1)(D)(i)(I)), and Option Two (18 U.S.C. § 3624(g)(1)(D)(i)(II)). *See Barrios v. Bienemy*, 2026 WL 1092254, at *5-6 (E.D. Va. Apr. 22, 2026).

10.     An inmate with a "high risk" or "medium risk" recidivism level may request the application of their FSA time credits by initiating such a request by submitting an Inmate Request to Staff to his Unit Manager at his regularly scheduled Program Review.[6]

11.     In October 2023, Mitchell's risk level designation was "high," with a "General Score" of 61 and a "Violent Score" of 41. Dkt. No. 2 at 2.

12.     On August 9, 2024, Mitchell's risk level designation was "high," with a "General Score" of 52 and a "Violent Score" of 37. *Id.*

13.     On October 24, 2024, Mitchell filed an attempt at informal resolution of his complaint that he had been denied his FSA time credits because his risk level designation was "high medium." Dkt. 1-2 at 16.

14.     Because the attempt at informal resolution with his counselor was unsuccessful, Mitchell initiated a request for an Administrative Remedy on January 2, 2025. *Id.* at 15. The Warden responded that

> [a] review of your complaint revealed your FSA Time Credits cannot be applied because your FSA Recidivism Risk Assessment is High. Program Statement 5410.01 CN-2, entitled First Step Act of 2018-Time Credits, states: Inmates with high or medium PATTERN recidivism risk levels are exceptions to the routine application of this policy with regard to awarding FTCs toward early transfer to prerelease custody and/or supervised release. The Warden will consult with the Regional Director before approving an inmate under section (c)(2), unless an exemption is granted by the Regional Director consistent with the Program Statement Directives Management Manual. Inmates may initiate a request under (c)(2) by submitting a BP-A0148, Inmate Request to Staff, during their regularly scheduled Program Review.

---

[6] *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II); BOP Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 16, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (last viewed, June 8, 2026).

8

*Id.* at 14.[7]

15.     Mitchell filed an appeal on January 20, 2025, arguing that he had "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or ha[d] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment," 18 U.S.C. § 3624(1)(B), that he had "reduced recidivism level as of 8/09/24 from a FSA Recidivism Risk Assessment and so qualifies to have FSA time credits applied to his release." *Id.* at 13.

16.     On March 4, 2025, the Regional Director upheld the Warden's decision stating Mitchell was not eligible to earn FSA time credits. *Id.* at 12. The decision stated that "while inmates with all PATTERN risk scores may earn [FSA time credits], only eligible inmates who have a Low or Minimum risk level and are in 'eligible to apply' status, will be able to apply their [FSA time credits]," and because Mitchell was "currently a High risk level inmate" he was "therefore ineligible to apply any earned" FSA time credits. *Id.*

17.     The Regional Director also advised Mitchell that he could "initiate a request to apply FSA Time Credits by submitting a BP-A0148, Inmate Request to Staff, during [his] regularly scheduled Program Review in August 2025. The Unit Manager will submit a request, along with the unit team's recommendation, to the Warden (or designee) for final decision." *Id.*

---

[7] Mitchell's brief in support of his petition references and quotes from BOP Program Statement 5220.01, dated July 14, 2021, Dkt. No. 2 at 5-6 11, but he did not attach the alleged document. The BOP's website does not support his citations and alleged quotations. *See* https://www.bop.gov/policy/progstat/5220.01.pdf (last viewed, June 8, 2026). The Warden cited Program Statement 5410.01 CN-2, which it appears to be the document that Mitchell is quoting from. *See* BOP Program Statement 5410.01, First Step Act of 2018–Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4) at 13-14, https://www.bop.gov/policy/progstat/5410.01_cn2.pdf (28 C.F.R. § 523.44, Application of FSA Time Credits) (last viewed June 8, 2026).

18. On July 24, 2025, Mitchell's FSA Time Credit Assessment indicated that he had 1,164 accrued program days, 15 FSA time credits toward RRC/HC and 365 FSA time credits toward his release date. Dkt. No. 1-2 at 5; Dkt. No. 13-1 at 12. The assessment also stated that he was not eligible to have his FSA time credits applied toward his release, and that his risk level designation was "high." Dkt. No. 1-2 at 5, 6.

19. Mitchell alleges that he asked for his FSA time credits to be applied, which is supported by his request for an Administrative Remedy, Dkt. 1-2 at 15, but the record does not indicate that Mitchell submitted a BP-A0148, Inmate Request to Staff, during any of his Program Reviews.

## III. DISCUSSION

Mitchell's argument fails because while he may earn good time credits, due to his high-risk recidivism level, by statute (18 U.S.C. § 3624(g)(1)(D)(i)-(ii)), BOP is precluded from applying the FSA time credits. *See, e.g.*, *Brown v. Garrett*, 2022 WL 18161601, at *3 (N.D. Ala. Dec. 22, 2022) (rejecting petitioner's argument that "she 'will never be a [l]ow or [m]inimum risk due to [her] past criminal history'" and explaining, "[w]hile [the petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)-(ii), the BOP cannot apply those time credits to her sentence unless and until she has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release."), *R&R adopted*, 2023 WL 130519 (N.D. Ala. Jan. 9, 2023). "[T]he FSA expressly provides that while an inmate who has a PATTERN score of medium or high risk of recidivism is eligible to complete EBRR programs and PAs [Productive Activities], the successfully completed programs and PAs are not applied towards

10

the inmate's time credits until [he] has received a minimum or low risk PATTERN score for two consecutive assessments." *Id.* (citing 18 U.S.C. § 3624(g)(1)(D)(i), (ii)). "[A]ll BOP inmates receive such reviews every 180 days." *Torok v. Beard*, 2022 WL 2703836, at *1 (D. Md. July 12, 2022), *aff'd sub nom. Torok v. Carter*, 2025 WL 3497993 (4th Cir. Dec. 5, 2025) (per curiam) (unpublished).

The FSA was enacted by Congress in 2018 with the primary goal to reduce recidivism of federal prisoners upon their release from imprisonment. 18 U.S.C. § 3632(a). Under the FSA, the Attorney General was charged to develop and release a Risk and Needs Assessment System (the "System"). *See* 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities; (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. *See id.*

The FSA allows *eligible inmates* who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A). Mitchell's argument ignores that the FSA expressly addresses who are the eligible inmates. "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g) [18 USCS § 3624(g)], into prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); *see supra* at 6-7 (text of 18 U.S.C. § 3624(g)(1)).[8]

---

[8] The FSA declares that inmates convicted of certain offenses, not relevant to this case, are

11

Importantly, the relevant portion of § 3624(g) is written in the conjunctive. An "Eligible prisoner" is one who has "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;" "has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;" "has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law;" *and*

> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner--
>
> > (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
> >
> > (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--
> >
> > (aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;
> >
> > (bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> >
> > (cc) the prisoner is unlikely to recidivate; or
> >
> > (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1)(D). The clear language of 18 U.S.C. § 3624(g) precludes application of time credits until Mitchell has lowered his recidivism risk level.

---

ineligible inmates for FSA time credits. 18 U.S.C. § 3632(d)(4)(D) (listing sixty-eight specific convictions).

12

If the inmate is unable to satisfy this requirement concerning his recidivism risk level, then he may petition the warden of the prison to be individually considered for placement in prelease custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II). The warden, in turn, can approve the inmate's "petition to be transferred to prerelease custody or supervised release" upon concluding that: (1) the inmate "would not be a danger to society if transferred to prerelease custody or supervised release;" (2) the inmate "has made a good faith effort to lower [his] recidivism risk through participation in recidivism reduction programs or productive activities;" and (3) the inmate "is unlikely to recidivate[.]" *See id.* § 3624(g)(1)(D)(i)(II)(aa)-(cc); *see also* 28 C.F.R. § 523.44(c)(2)(i)-(iii).

The "labyrinthine interaction between eligibility to earn and receive credits and eligibility to apply those same credits is no doubt frustrating to prisoners trying to navigate the system," *Nevel v. Brown*, 2023 WL 8505881, at *6 (N.D. W. Va. Oct. 27, 2023), *R&R adopted*, 2023 WL 7490046 (N.D. W. Va. Nov. 13, 2023), and Mitchell's frustration is evident in his pleadings and exhibits. Nonetheless, an inmate, like Mitchell, with a high PATTERN score can petition the warden to be considered on an individualized basis for placement in prerelease custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(D)(i)(II).[9] And there is nothing in the record

---

[9] *See Cook v. Leu*, 2026 WL 458442, at *2-3 (E.D.N.C. Feb. 18, 2026) ("Under § 3624(g), . . . time credits toward pre-release custody or supervised release are only applicable to prisoners designated as minimum risk to recidivate or low risk to recidivate in two previous risk assessments," and where an inmate "does not dispute that his latest risk assessment indicated a medium recidivism risk level," the inmate's "recidivism risk level makes him ineligible under § 3624(g), [and] the statute permits the [BOP] to decline to apply" the inmate's time credits "until he meets a minimum or low risk level." (citing 18 U.S.C. § 3624(g)(1)(D); *White v. Warden of Fed. Corr. Inst.-Cumberland*, 164 F.4th 326, 334 (4th Cir. 2026))). *White* concerned an inmate seeking to apply credits that he had not earned because he did not participate in any programming. Nevertheless, *White* observed that the time credits "may only be applied to reduce the prisoner's term of incarceration if he has a sufficiently low risk of recidivism *or* if the warden approves a

indicating that Mitchell made such a request to the warden, even though the Warden and the Regional Director each mentioned in their decisions denying the Administrative Remedy that Mitchell could initiate a request to apply FSA Time Credits by submitting a BP-A0148, Inmate Request to Staff, during his regularly scheduled Program Reviews. *See supra* at ¶¶ 14, 17. Thus, the Court must deny his claim.[10]

Mitchell challenges the BOP's failure to apply his time credits because he did not have a low or minimum recidivism status—arguing that BOP's interpretation of the FSA is inconsistent with the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and other cases relating to statutory interpretation, because the statute clearly requires that his FSA time credits should be applied to his prerelease custody date despite his "high" recidivism status. Dkt. No. 1-2 at 11. Specifically, he focuses on 18 U.S.C. § 3632(d)(4)(C), which states that, "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or

---

waiver of that requirement." *Id.* (emphasis added) (citing 18 U.S.C. § 3624(g)).

[10] In affirming the district court's decision in *Torok,* the Fourth Circuit held that

> Under § 3632(d)(4), an inmate can earn time credits for participation in recidivism reduction programming, and such credits are applicable toward time in prerelease custody or supervised release, if the inmate is eligible under 18 U.S.C. § 3624(g). 18 U.S.C. § 3632(d)(4)(A), (C). Under § 3624(g), time credits toward prerelease custody or supervised release can only be applied to inmates who have been designated as minimum or low risk to recidivate for the previous two risk assessments. 18 U.S.C. § 3624(g)(1)(D). Torok does not dispute that he has been designated either high or medium risk for recidivating throughout his incarceration. *Because Torok's recidivism risk level renders him ineligible under § 3624(g), the Bureau of Prisons is statutorily authorized to deny the application of Torok's earned time credits to his sentence until he brings his recidivism risk level down to minimum or low.*

*Torok*, 2025 WL 3497993, at *1 (emphasis added).

supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g) [18 USCS § 3624(g)], into prerelease custody or supervised release," 18 U.S.C. § 3624(g)(1)(B); Dkt. No. 2 at 6-7. Mitchell asserts that the use of the word "shall" in the statute supports his position. *Id.*

Mitchell's reliance on *Loper Bright* is misplaced because *Loper Bright* only applies if the statute is ambiguous.[11] Despite his belief to the contrary and the statute's use of "disjunctive" language, the FSA is not ambiguous. Indeed, Mitchell ignores § 3624(g)(1)(D), which "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release." *Purdy v. Carter*, 2024 WL 4651275, at *5 (D. Md. Nov. 1, 2024) (citing 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii)). Numerous courts agree with this proposition and have rejected arguments that the FSA is ambiguous such that *Loper Bright* is applicable.[12] *See Williams*

---

[11] In *Loper Bright*, the Supreme Court overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which required courts to defer to agencies' reasonable interpretations of ambiguous statutes. 603 U.S. at 412-13. Under *Loper Bright*, courts may not defer to an agency's interpretation of the law simply because a statute is ambiguous but rather "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." 603 U.S. at 412.

[12] *See, e.g.*, *Barrios v. Bienemy*, 2026 WL 1092254, at *5 (E.D. Va. Apr. 22, 2026) (Section 3624(g)(1)(D) "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised release," and "[i]f a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits." (citing 18 U.S.C. § 3624(g)(1)(D)(i)(II) and quoting *Purdy*, 2024 WL 4651275, at *5 (citing 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii), and *Welch v. Heckard*, No. 5:23cv00347, 2023 WL 6885005, at *4 (S.D. W. Va. Sept. 19, 2023) ("If a prisoner does not have a minimum or low recidivism risk level, he must petition the Warden for individual approval of the application of his earned time credits." (footnote and citation omitted)), *R&R adopted*, 2023 WL 6882684 (S.D. W. Va. Oct. 18, 2023))).

*v. FCI Beckley Warden*, 2025 WL 4033845, at *5 (S.D. W. Va. Nov. 19, 2025), *R&R adopted,* 2026 WL 88542 (S.D. W. Va. Jan. 12, 2026) (collecting cases and finding *Loper Bright* inapplicable because "Section 3624(g)(1) explicitly prohibits the BOP from applying FSA credit unless an inmate has a minimum or low-risk recidivism scores (PATTERN score)").

The Court agrees with the overwhelming weight of authority addressing this issue. Put simply, *Loper Bright* is not applicable, and Mitchell was and is not entitled to have his time credits applied toward a transfer to prerelease custody pursuant to 18 U.S.C. § 3624(g)(1)(D)(i)(I). While Mitchell is eligible to *earn* time credits, that does not necessarily mean that he may *apply* those time credits to his sentence. *See West v. Cutwright*, 2025 WL 2639883, at *5 (S.D. W. Va. July 9, 2025) ("Although all eligible inmates may earn FSA time credit, only some inmates are eligible to apply those time credits." (citation omitted)), *R&R adopted*, 2025 WL 2641713 (S.D. W. Va. Sept. 12, 2025). There are two options for having FSA time credits applied to a federal prisoner's sentence. Option One is that a prisoner lower his or her risk recidivism level to minimum or maintain a low recidivism risk for his last two assessments, *see* 18 U.S.C. § 3624(g)(1)(D)(i)(I), in order for their earned time credits to be applied toward transfer to prerelease custody. *Barrios,* 2026 WL 1092254, at *5. Mitchell does not qualify for Option One. Option Two is that a prisoner request the warden to make the necessary findings (that the prisoner would not be a danger to society if transferred to prerelease custody or supervised release, the prisoner as made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities, and the prisoner is unlikely to recidivate), and grant his petition. Mitchell has not pursued Option Two.

## IV. CONCLUSION

Accordingly, for the reasons outlined above, it is hereby

ORDERED that Respondent's motion to dismiss, Dkt. No. 11 is GRANTED; and it is

FURTHER ORDERED that the motion for summary judgment, Dkt. No. 12, is DISMISSED as MOOT.

To appeal this decision, Petitioner must file a written notice of appeal with the Clerk's office within thirty (30) days of the date of this Order. *See* Fed. R. App. P. 4(a). A written notice of appeal is a short statement indicating a desire to appeal and including the date of the Order the Petitioner wishes to appeal. Failure to file a timely notice of appeal waives the right to appeal this decision.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Respondent; to send a copy of this Order and the accompanying Memorandum Opinion to Petitioner and counsel of record for Respondent; and to close this civil action.

Alexandria, Virginia
June 23, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge